IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CRIMINAL NO: 07-737-3 |
| : | |
| DARRYLE DUNBAR, : | |
|    a/k/a "DJ," : | |
|    a/k/a "Mark Cross" : | |

<u>**GOVERNMENT'S SENTENCING MEMORANDUM**</u>

Defendant Darryle Dunbar pled guilty to one count of conspiracy to distribute five or more kilograms of cocaine and 50 or more grams of cocaine base ("crack") on May 13, 2008. The charges in the indictment arose from the events of 2002 through March 2007, during which time the members of this conspiracy (the SCCG) obtained cocaine hydrochloride in Philadelphia, Pennsylvania and sold it as cocaine base ("crack") in Cecil County, Maryland. Defendant Darryle Dunbar's role was that of a principal manager and seller for the SCCG. In this role, Dunbar traveled with Kareem Smith between Philadelphia and Cecil County Maryland to obtain cocaine. Once obtained, the cocaine was converted to "crack" by Dunbar and others, and sold to customers of the SCCG by Dunbar and other members of the conspiracy.

On November 8, 2002, police executed a search warrant at Motel 6 room 254, rented by Robert Waldridge, but occupied by Dunbar and his girlfriend. A search of that room turned up a Colt .38 caliber revolver, a small amount of crack cocaine and marijuana, two cell phones, and packaging materials. Dunbar was arrested nearby and had $816 on his person.

On December 13, 2002, police executed a search warrant at 103 Champlain Road, a mobile home in the Lakeside Mobile Home Park. Upon entering the home, police located Dunbar. A subsequent search of Dunbar revealed approximately 64 grams of cocaine powder

and 54 pink packets of crack cocaine (about 9.5 grams, total), $354 and a single round of .45 caliber ammunition.  In the living room, officers found two firearms, a .45 caliber Colt and a .25 caliber RG Industries, both semi-automatic, and both with loaded magazines lying alongside the weapons (all were found in or underneath living room furniture).  Additional boxes of .45 caliber and .25 caliber ammunition were located under the couch.

Dunbar has an offense level of 40 and a criminal history category of  has fourteen criminal history points and is therefore a criminal history category V.  Dunbar's guideline range is 360-lifetime imprisonment, including a 20 year mandatory minimum.

I.      BACKGROUND

On May 13, 2008, the defendant pled guilty to participation in a conspiracy to distribute cocaine and "crack" cocaine, in violation of 21 U.S.C. § 846.  During his plea colloquy, the defendant admitted that he was a principal manager for the SCCG, obtaining cocaine, converting it to "crack," and selling the "crack" to customers of the SCCG.[1]

II.     SENTENCING CALCULATION

   A.   **Statutory Maximum Sentence.**

Lifetime imprisonment including a mandatory minimum term of imprisonment of 20 years, an $8,000,000 fine, a mandatory minimum of 10 years  up to lifetime supervised release, and a $100 special assessment.

---

[1] The indictment in this case charges that the conspiracy existed from November 2002 through September 2007.  After his arrest in December 2002, Dunbar was incarcerated for approximately 4 years and after his release from prison he did not return to the conspiracy.  Thus, his total involvement in the charged conspiracy was for approximately 1 ½ months.  However, it should be noted that based on testimony, including the trial testimony of Dunbar himself, he was the person who introduced the idea of selling "crack" in Cecil County Maryland and from early 2000 he and coconspirator Landrum Thompson together went to Maryland and began selling "crack."

  **B.**  <u>**Sentencing Guidelines Calculation.**</u>

  The Probation Office calculated the defendant's advisory guideline range to be mandatory lifetime imprisonment.  The government disagrees with this calculation because the calculation relies in part on an 851 notice filed by the government that is partially flawed.  The 851 notice cites two felony drug convictions however, only one can be used to enhance Dunbar's mandatory minimum sentence.[2]  Therefore, Dunbar's mandatory minimum sentence is 20 years, not mandatory lifetime imprisonment as indicated in paragraph 129 of the PSR.  The government believes that the appropriate guidelines calculation is as follows: the base offense level is calculated as level 38.  Two levels are added because dangerous weapons were possessed by various members of the conspiracy during the conspiracy's existence.  Three levels are then added because the defendant was a manager or supervisor if the activities of the conspiracy.  A total of three additional levels are subtracted because the defendant timely accepted responsibility for his crime and notified the government that he would not proceed to trial.  The resulting total offense level is 40.  With a criminal history category of V, the defendant's advisory guideline range is 360-lifetime imprisonment, including a 20 year mandatory minimum.

**III.**  <u>**ANALYSIS.**</u>

  A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that this Court should accept the calculation of the advisory guidelines as set forth above, review all other factors, including the mandatory minimum sentence, and impose an appropriate sentence.

---

  [2] Dunbar does have a separate qualifying prior felony drug conviction that would otherwise enhance his mandatory minimum sentence to lifetime imprisonment, however the government failed to list this prior conviction in the 851 notice.  Therefore because Dunbar did not receive proper notice under Section 851, the prior conviction can not be used to enhance his mandatory minimum.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 128 S. Ct. 586, 596 (2007). Thus, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

This Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).[3]

---

[3] Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'" United States v. Dragon, 471 F.3d 501, 506 (3d Cir. 2006) (quoting United States v. Navedo-Concepcion, 450 F.3d 54, 58 (1st Cir. 2006)).

**Consideration of the 3553(a) Factors.**

**(1)    The nature and circumstances of the offense and the history and characteristics of the defendant.**

The defendant engaged in a serious offense of conspiracy to distribute cocaine base ("crack").  In addition, his role was significant even though he only spent a very short amount of time involved in the charged conspiracy.  Dunbar's role in the offense was important nonetheless.  He acted as a principal seller for the SCCG and his duties included obtaining cocaine from sources of supply in Philadelphia, transporting it to Cecil County Maryland, converting it to "crack," and selling it to customers.  In addition, Dunbar was the person who introduced the idea of selling "crack" in Cecil County Maryland.  As a result of him communicating this idea to an eventual coconspirator Landrum Thompson, the SCCG was able to establish itself as the premier "crack" cocaine distribution organization in the area.  This organization thrived for more than five years and sold in excess of approximately 700 kilograms of "crack" cocaine.  In so doing, the SCCG destroyed countless lives which has had an immeasurable impact on society.

Darryle Dunbar has a history of involvement in the criminal justice system which began at an early age of 18 years old and continued until 2003 when he was 22 years old.  It was at this time that Dunbar was incarcerated in connection with underlying drug activity charged in this case.  He remained incarcerated for a period of approximately four years, was released for a short period of time but was the recommitted after his arrest for the offense charged in this case.  As a result of his past crimes, he enjoys a Criminal History Category of V.  His prior convictions include five drug convictions and one conviction for receiving stolen property.  As a result, Dunbar has spent almost his entire adult life in jail.

**(2)** **The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.**

The offense charged in count one of the superseding indictment is serious. To suggest otherwise would be absurd. The drug conspiracy that Dunbar helped form lasted for a lengthy period of time during which approximately 700 kilograms of "crack" cocaine was distributed throughout Philadelphia and Cecil County Maryland. The sentence imposed in this case must account for the damage caused by the actions of Dunbar and his coconspirators and provide just punishment for his role in the offense.

**(3)** **The need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.**

There is no doubt that the Court's sentence in this case must deter others like Darryle Dunbar who would consider engaging in similar serious criminal conduct. Thus the need for general deterrence is great. In addition, although Dunbar has made great strides on the path toward rehabilitation, it is not presently clear that he will not return to a life of crime after he is released from prison. However, to his credit, after he was released from prison in 2006 he did not return to the SCCG even though attempts were made to recruit him back into the organization. Perhaps this is a sign that he does intend to remain on the right path. This notwithstanding, the Court's sentence in this case must act as a reminder to Dunbar that he cannot repeat the past.

**(4)** **The need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

Although it does not appear that Dunbar has suffered from any major drug addiction, he was a frequent user of marijuana from the early age of 13. In addition, Dunbar has abused alcohol on a frequent basis. Therefore, Dunbar would benefit from drug and alcohol

treatment while incarcerated.  The government requests that the Court require Dunbar to participate in drug and alcohol counseling as part of his sentence.  Also, Dunbar admittedly has little to no work experience and does not seem to possess any skill that would assist him in obtaining employment after his release from prison.  Therefore, the government also requests that Dunbar participate in vocational training as part of his sentence.  Together, these things will help Dunbar adjust and become a productive member of society upon his release from prison.

**(5)** **The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

Darryle Dunbar will be the tenth defendant and the first principal manager in the SCCG to be sentenced in this case.  It is the government's belief that Dunbar is the eighth most culpable out of the eighteen defendants charged in this conspiracy.  He is one of only three members of the conspiracy who are considered "principal managers" of the SCCG.  In terms of ranking in the SCCG, he and the other two principal managers are second only to Kareem Smith, the leader of the SCCG.  There are others who's culpability rank are higher than Dunbar's because he was involved for a very short period of time.  In fact, Dunbar was involved in the charged conspiracy for the shortest period of time.  Therefore it is important to consider his role in comparison to other members of the conspiracy in determining the appropriate sentence in this case.

**(6)** **The need to provide restitution to any victims of the offense.**

Restitution is not an issue in this case.

IV.     **OBJECTIONS TO PSR**

The defendant raises numerous objections to the PSR, most of which are refuted by his written guilty plea agreement and his trial testimony. If necessary, the government will is prepared to address each objection at sentencing. For the reasons stated above, the government does concede the defendant's objection to paragraph 177 of the PSR. Dunbar is facing a mandatory minimum sentence of 20 years, not lifetime imprisonment.

V.      **CONCLUSION**

Therefore, in sum, all of the appropriate considerations of sentencing favor the acceptance by the properly calculated advisory guideline calculation as set forth herein, and the imposition of an appropriate sentence, taking into account all submissions by the parties.

Respectfully submitted,

MICHAEL L. LEVY
United States Attorney


SALVATORE L. ASTOLFI
KATHY A. STARK
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Government's Sentencing Memorandum has been served by facsimile upon:

Richard G. Freeman, Esquire
924 Cherry Street
Philadelphia, PA 19107

Fax #: (215) 922-1599

_____
SALVATORE L. ASTOLFI
Assistant United States Attorney

DATED:  December 7, 2009.